**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In The Matter of Brad Levenson

No. 09-80172
ORDER

Filed November 18, 2009

## ORDER

### Overview

Brad Levenson, a deputy federal public defender in the Office of the Federal Public Defender for the Central District of California ("FPD"), is legally married, under California law, to Tony Sears. Nevertheless, Levenson has not been permitted to enroll Sears as a family member beneficiary of his federal health, dental, and vision benefits (hereinafter "federal benefits") because both spouses are of the same sex. In a previous order, I determined that the denial of benefits on this ground violates the Ninth Circuit's Employment Dispute Resolution Plan for Federal Public Defenders and Staff ("EDR Plan"), which expressly prohibits discrimination on the basis of sex and sexual orientation. I also determined for similar reasons that the denial of benefits violates the United States Constitution. As a further remedy for those violations, Levenson now requests an order directing the FPD to enter into separate contracts with private insurers in order to provide Sears with benefits comparable to those provided in the existing federal plans, or alternatively, a monetary award pursuant to the Back Pay Act. For the reasons set forth below, I have determined that an order directing the FPD to enter into separate health insurance contracts would not be a "necessary and appropriate" remedy within the scope of the EDR Plan. A

15541

back pay award, however, would be appropriate under the circumstances. Accordingly, I grant Levenson's alternative request for a monetary award, and remand the matter to the FPD to determine the actual amount to be awarded.

## Facts

Brad Levenson has been a deputy federal public defender in the FPD since July 11, 2005. He and Tony Sears have been partners for 15 years. They registered their domestic partnership on March 16, 2000, and were married in California on July 12, 2008, at a time when under the law in that state persons could marry individuals of the same sex. On July 15, 2008, Levenson requested that his husband be added as a family member beneficiary of his federal benefits.[1] That request was denied on the basis that the provision of benefits to same-sex spouses is prohibited by the federal Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7. Levenson challenged that denial as a violation of his rights under the EDR Plan and the Constitution.

The EDR Plan provides for the only forum in which Levenson can bring a claim of employment discrimination. The Plan was adopted by the Ninth Circuit Judicial Council "to provide rights and protections to employees of the Federal Public Defender Offices . . . which are comparable to those provided to legislative branch employees under the Congressional Accountability Act of 1995."[2] EDR Plan at A-1. The Plan pro-

---

[1] FPD employees and their family members have the right to these benefits pursuant to the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901-8914 ("FEHBA"), and FEDVIP, the federal employee dental and vision insurance program, *see* 5 U.S.C. §§ 8951-62, 8981-92; 5 C.F.R. §§ 894.101 *et seq.* Before Levenson joined the FPD, he was employed in the California Attorney General's Office, which provided Sears with full medical, dental, and vision benefits. Since Levenson joined the FPD, he and Sears have paid the full cost of Sears's health insurance premiums and his dental and vision care.

[2] The Congressional Accountability Act of 1995 "extended to [Congress's] employees the protections of eleven labor laws generally applica-

hibits discrimination on numerous grounds, including both sex and sexual orientation, *id.* at A-2, and establishes a grievance procedure for presenting claims of discrimination, *id.* at A-4-A-14.

As required by the EDR Plan, *see id.* at A-6-A-9, Levenson requested counseling, which failed, and mediation, which also failed. He then filed the pending complaint. *Id.* at A-10. In my role as Chair of the Ninth Circuit's Standing Committee on Federal Public Defenders at the time of the complaint's filing, and presently as designee of the current Chair of the Standing Committee, I am charged with hearing and ruling upon Levenson's complaint and fashioning a "necessary and appropriate" remedy. *Id.* at A-10, A-13.

In my previous order, I ruled that the denial of benefits to Levenson's spouse violated the anti-discrimination provisions of the EDR Plan as well as the Due Process Clause of the Fifth Amendment. I directed the Director of the Administrative Office of the United States Courts ("AO") to submit Levenson's Health Benefits Election form 2809 to the appropriate health insurance carrier, and to process his request for FEDVIP coverage. I retained jurisdiction over this matter in order to ensure that Levenson's spouse receives the benefits to which he is entitled.

Although the AO complied with my previous order, Levenson's spouse has not yet received coverage under the federal benefits plans because the Office of Personnel Management

---

ble to other public and private employees, including the protections against discrimination provided in Title VII . . . ." *Dotson v. Griesa*, 398 F.3d 156, 173 (2d Cir. 2005). "In enacting the CAA, Congress initially considered extending the statute's coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action." *Id.* Thus, the EDR Plan, rather than Title VII or any other federal labor law, provides Levenson's exclusive remedy for his claim of employment discrimination.

("OPM") intervened to prevent his enrollment. Levenson does not request that I take any action against OPM for its role in the ongoing unconstitutional denial of federal benefits for his spouse. Rather, he requests that I enter an order directing the FPD to contract with private insurance companies to obtain separate coverage for his spouse, or alternatively, that I issue a monetary award pursuant to the Back Pay Act.

## Analysis

Under the EDR Plan, I have the authority to order a "necessary and appropriate remedy" for the violation of a substantive right protected by the Plan. EDR Plan at A-13. The remedy may be retrospective, prospective, or both, and must be "tailored as closely as possible to the specific violation involved." *Id.* It would be consistent with this grant of equitable authority to consider Levenson's views as to how best to make him whole, and if possible, to award one of the remedies he has requested. Whether either of the two proposed alternatives is both appropriate and closely tailored depends, in turn, on the specific nature of the violation. Accordingly, I begin by examining the nature of the discrimination Levenson has experienced and the statutory framework within which that violation has occurred.

## I.  Substantive rights violated by the denial of spousal benefits

As I stated in my previous order, the denial of Levenson's request that Sears be made a beneficiary of his federal benefits violated the EDR Plan's prohibition on discrimination based on sex or sexual orientation. Levenson was unable to make his spouse a beneficiary of his federal benefits due solely to his spouse's sex. If Sears were female, or if Levenson himself were female, Levenson would be able to add Sears as a beneficiary. Thus, the denial of benefits at issue here was sex-based and constitutes a violation of the EDR Plan's prohibition of sex discrimination. Alternatively, the

denial of benefits constitutes discrimination on the basis of sexual orientation. As the California Supreme Court recently explained, the differential treatment of opposite-sex and same-sex couples

> cannot be understood as having merely a disparate impact on gay persons, but instead properly must be viewed as directly classifying and prescribing distinct treatment on the basis of sexual orientation. By limiting [benefits] to opposite-sex couples, the [ ] statutes, realistically viewed, operate clearly and directly to impose different treatment on gay individuals because of their sexual orientation. By definition, gay individuals are persons who are sexually attracted to persons of the same sex and thus, if inclined to enter into a marriage relationship, would choose to marry a person of their own sex or gender. A statute that limits [benefits] to a union of persons of opposite sexes, thereby placing [those benefits] outside the reach of couples of the same sex, unquestionably imposes different treatment on the basis of sexual orientation. In our view, it is sophistic to suggest that this conclusion is avoidable by reason of the circumstance that the marriage statutes permit a gay man or a lesbian to marry someone of the opposite sex, because making such a choice would require the negation of the person's sexual orientation.

*In re Marriage Cases*, 43 Cal. 4th 757, 839-40 (2008).[3]

---

[3]Following issuance of the decision in *In re Marriage Cases*, the voters of California adopted by a narrow margin an initiative measure adding to the California Constitution a provision prohibiting same-sex marriage. *See Strauss v. Horton*, 207 P.3d 48, 59 (Cal. 2009). The California Supreme Court upheld the enactment of that change by a simple majority of those voting on the statewide initiative, notwithstanding the claim that such a change constituted a revision of the California Constitution, which under

Because the EDR Plan prohibits discrimination based on both sex and sexual orientation, it is not necessary to determine which form of discrimination is at issue in the present proceeding in order to find a violation of the EDR Plan. Regardless of whether Levenson experienced discrimination due to his sex or due to his sexual orientation, the denial of benefits violated the EDR Plan.

The denial of federal benefits originally occurred because the Office of the Circuit Executive concluded that DOMA, as applied to the statutes governing health benefits for federal employees, precluded an award of federal benefits to Levenson's spouse. Federal employees, including employees of the FPD, receive health benefits pursuant to the FEHBA. The FEHBA permits federal employees to elect coverage "either as an individual or for self and family," 5 U.S.C. § 8905(a), and defines "member of family" as "the spouse of an employee or annuitant" or "an unmarried dependent child under 22 years of age . . . ." 5 U.S.C. § 8901(5). FEDVIP likewise defines "family member" as "a spouse . . . and/or unmarried dependent child(ren)."[4] 5 C.F.R. § 894.101. DOMA operates as a limitation on these definitions by providing that,

California law required the use of a different electoral process. *Id.* at 60, 63-64. The plaintiffs in that proceeding did not raise the question whether the ban on same-sex marriage violated the Federal Constitution.

Although the California Supreme Court held that allowing the initiative to have prospective effect was consistent with the state Constitution, the court also concluded that "the marriages of same-sex couples performed prior to the effective date of [the ballot measure] remain valid and must continue to be recognized in this state." *Id.* at 64. Because Levenson and Sears were married before the measure was adopted, their marriage remains valid under California law.

[4]The statutes that establish FEDVIP incorporate the definition of family member in the FEHBA, 5 U.S.C. §§ 8951, 8981, and have the same structure as the FEHBA. For the sake of simplicity, I will conduct the subsequent discussion solely in terms of the FEHBA. However, the arguments apply in full to both the FEHBA and FEDVIP.

"[i]n determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7. Accordingly, when the FEHBA and FED-VIP provisions defining family members are read in light of the limitation imposed by DOMA, those provisions include only *opposite-sex* spouses.

As I concluded in my previous order, the application of DOMA to FEHBA so as to deny Levenson's request that his same-sex spouse receive federal benefits violates the Due Process Clause of the Fifth Amendment. In reaching that conclusion, I believe it likely that some form of heightened constitutional scrutiny applies to Levenson's claims. *See, e.g.*, *Witt v. Dep't of Air Force*, 527 F.3d 806, 818-21 (9th Cir. 2008) (applying heightened scrutiny on an "as applied" basis to a discharged service member's challenge to the military's "Don't Ask, Don't Tell" policy); *id.* at 823-26 (Canby, J., concurring in part and dissenting in part) (arguing that discrimination based on sexual orientation is subject to strict scrutiny); *see also Baehr v. Lewin*, 852 P.2d 44, 67, 68 (Haw. 1993) (finding distinction between opposite-sex couples and same-sex couples to be a sex-based classification subject to heightened scrutiny). However, the denial of benefits here cannot survive even rational basis review, the least searching form of constitutional scrutiny. Accordingly, it is not necessary to determine whether or which form of heightened scrutiny is applicable to this claim. Because there is no rational basis for denying benefits to the same-sex spouses of FPD employees while granting them to the opposite-sex spouses of FPD employees, I conclude that the application of DOMA to the FEHBA so as to reach that result is unconstitutional.

Any government action resting on a distinction between discrete classes "must be rationally related to a legitimate

governmental purpose." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). Under this standard, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. Furthermore, some objectives — such as a bare desire to harm a politically unpopular group — are not legitimate state interests." *Id.* at 446-47 (citations omitted). Applying this standard to the present case, the challenged denial of benefits is constitutional only if there is a rational basis for the government to provide FEHBA and FEDVIP coverage to the opposite-sex spouses of FPD employees while denying those benefits to the same-sex spouses of FPD employees. No such basis exists.[5]

The denial of federal benefits to same-sex spouses cannot be justified simply by a distaste for or disapproval of same-sex marriage or a desire to deprive same-sex spouses of benefits available to other spouses in order to discourage them from exercising a legal right afforded them by a state. As *City of Cleburne* made clear, "a bare desire to harm a politically unpopular group" cannot provide a rational basis for governmental discrimination. *Id.* at 447. In *Romer v. Evans*, 517 U.S. 620 (1996), the Supreme Court applied that rule in the specific context of a law that discriminated against gays and lesbians and held that the state constitutional amendment at issue, which raised "the inevitable inference that the disadvantage imposed [was] born of animosity" toward gays and lesbians as a class, was unconstitutional. *Id.* at 634-36. Thus, the denial of federal benefits to same-sex spouses cannot be justified as an expression of the government's disapproval of

---

[5]I should note that marriage is a status traditionally established and regulated by state law. It is also a fundamental right. *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Whether a state may deny such status to same-sex couples is beyond the scope of this decision. Here, I need determine only whether same-sex spouses who have been legally married under the laws of the relevant state may, because of the sex or sexual orientation of the couple, be denied federal benefits that are afforded to other spouses legally married under such laws.

homosexuality, preference for heterosexuality, or desire to discourage gay marriage. *Romer* makes clear that a simple desire to treat gays and lesbians differently is not, in and of itself, a proper justification for government actions. Discrimination against gays and lesbians, or same-sex couples, must, at the very least, serve some more substantive and lawful function.

The House report on DOMA identified three interests advanced by the statute: "the government's interest in defending and nurturing the institution of traditional, heterosexual marriage;" "the government's interest in defending traditional notions of morality;" and "the government's interest in preserving scarce government resources." H.R. Rep. No. 104-664, at *12-*18. The first interest is largely irrelevant to the rational basis analysis here because the same-sex couple who seek the benefits are already married. Also, gays and lesbians will not be encouraged to enter into marriages with members of the opposite sex by the government's denial of benefits to same-sex spouses, and the denial will not discourage same-sex couples from entering into same-sex marriages; so, the denial cannot be said to "nurture" or "defend" the institution of heterosexual marriage. As to the second "interest," if the denial is designed to "defend" traditional notions of morality by discouraging same-sex marriage, it does so *only* by punishing same-sex couples who exercise their rights under state law, and thus exhibits the "bare desire to harm" same-sex couples that is prohibited under *City of Cleburne* and *Romer*. Moreover, discouraging gay marriage serves only to force gay couples to live in a "state of sin" rather than in a lawfully-recognized "state of connubial bliss" that encourages a long-enduring permanent relationship that, in turn, serves as the basis of a state-recognized family. Thus, rather than encouraging morality, the denial of fair and equal treatment to gay and lesbian couples encourages immorality, at least to the extent that it can be said to have any effect at all on decisions about whether and whom to marry. Where, as here, the couple involved is already married, those decisions have already

been made, and there can be no such effect. In addition, denying married same-sex spouses health coverage is far too attenuated a means of achieving the objective of "defending traditional notions of morality," as it also is with respect to achieving the objective of "defending and nurturing the institution of traditional, heterosexual marriage." More important, *Romer* and *Lawrence v. Texas*, 539 U.S. 558 (2003), strongly suggest that the government cannot justify discrimination against gays and lesbians or same-sex couples based on "traditional notions of morality" alone. *See Lawrence*, 539 U.S. at 571, 578 (finding criminal law barring homosexual sodomy constitutionally invalid despite "powerful voices" that "for centuries" have "condemn[ed] homosexual conduct as immoral"); *Romer,* 517 U.S. at 644 (Scalia, J., dissenting) (noting that the Colorado constitutional amendment held unconstitutional by the majority expressed the "moral disapproval of homosexual conduct" of Colorado's citizens). For these reasons, neither of the first two interests identified by Congress can provide a rational basis for the denial of benefits at issue here.

The third interest can be disposed of quickly. The denial of health insurance to same-sex spouses may in a comparatively few cases relieve the government of paying its portion of a family coverage premium. However, that a government policy incidentally saves the government an insignificant amount of money does not provide a rational basis for that policy if the policy is, as a cost-saving measure, drastically underinclusive, let alone founded upon a prohibited or arbitrary ground. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590 (9th Cir. 2008). That rule applies here: There is no rational relationship between the sex of an employee's spouse and the government's desire to limit its employee health insurance outlays; the government could save far more money using other measures, such as by eliminating coverage for all spouses, or even every fifth or tenth spouse. Further, the application of DOMA

in this context frequently saves the government no money at all.[6]

Recently, the government has advanced an additional argument in defense of DOMA: that the statute serves a legitimate governmental interest in maintaining a consistent definition of marriage at the federal level for purposes of distributing federal benefits while individual states consider how to resolve the issue of marriage equality for same-sex couples. Because this was not among the actual purposes Congress had for adopting DOMA, this post hoc justification would not survive the heightened scrutiny that, as I have stated, likely applies to Levenson's claim. *See supra* page 15547 (citing *Witt v. Dep't of Air Force*, 527 F.3d 806, 818-21 (9th Cir. 2008); *id.* at 823-26 (Canby, J., concurring in part and dissenting in part); *Baehr v. Lewin*, 852 P.2d 44, 67, 68 (Haw. 1993)). Even under the more deferential rational basis review, however, this argument fails. DOMA did not preserve the status quo vis-à-vis the relationship between federal and state definitions of marriage; to the contrary, it disrupted the long-standing practice of the federal government deferring to each state's decisions as to the requirements for a valid marriage. *Cf. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890))); *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956) ("[T]here is no federal law of domestic relations, which is primarily a matter of state concern."). Because state law governs marriage recognition, the only consistent definition that could be employed at the federal level is the one that was in effect prior to DOMA. At that

---

[6]The denial of coverage to same-sex spouses of FPD employees does not save the government any money if an FPD employee already has family coverage for a dependent, such as a child, because there is no cost to the employee or to the government of adding an additional family member to an existing family policy.

point, a marriage recognized as valid by the couple's state of domicile was also recognized as valid by the federal government. DOMA replaced that consistency with a marked *in*consistency: under DOMA, a couple can be legally married in their state of domicile but not "married" for purposes of receiving federal benefits.

Moreover, even if Congress could be said to have an independent interest in remaining neutral with regard to a contentious social issue, that is not what Congress did here. By enacting DOMA, Congress affirmatively stepped into the fray, and took the position that same-sex partners should not have access to federal benefits no matter what legal status a state decides to accord their relationship. Congress thus sided with those states that would limit marriage to opposite-sex couples, and against those states that would recognize the marriages of same-sex couples. Taking that position did not further any governmental interest in neutrality, if indeed such an interest exists.

I can identify no other governmental interests that might be served by denying Levenson's request that his spouse, Sears, receive the same federal benefits as other spouses of FPD employees. Excluding from health care coverage spouses of employees who have entered into legally binding relationships does not serve the government's interest in promoting long-term relationships. Likewise, it does not serve any governmental interest in promoting a child-rearing environment, because the children of same-sex couples are eligible for federal benefits and the denial of benefits to same-sex spouses will not affect the decisions made by same-sex couples regarding marriage or parenting. Aside from all else, the relationship of the denial of benefits to such potential objectives is "so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446. Accordingly, a decision denying Levenson's request that federal benefits be extended to his same-sex spouse would have no rational basis. In sum, to the extent that the application of DOMA serves to

preclude the provision of health insurance coverage to a same-sex spouse of a legally married federal employee because of the employee's and his or her spouse's sex or sexual orientation, DOMA, as applied, contravenes the Fifth Amendment to the United States Constitution and is therefore unconstitutional.

## II.   Proposed remedies

Bearing in mind the specific nature of the violation that has occurred, I now turn to the question whether either of Levenson's proposed remedies would be "necessary and appropriate," as well as "tailored as closely as possible" to the violation, so as to be a proper exercise of my remedial authority under the EDR Plan. EDR Plan at A-13.

### A.   An order directing the FPD to enter into separate contracts would not be appropriate

Levenson's first request is for an order directing the FPD to negotiate with private insurers to obtain benefits for Sears comparable to those he would receive if he were permitted to enroll in the federal benefits plans as Levenson's spouse. Although I give significant weight to Levenson's remedial preferences, I conclude that this particular remedy would not be appropriate under the current circumstances.

"Under federal law, a purported agreement with the United States is not binding unless the other party can show that the official with whom the agreement was made had authority to bind the United States." *Grosinsky v. United States*, 947 F.2d 417, 419 (9th Cir. 1991) (per curiam). Although the FEHBA creates authority to enter into health insurance contracts for federal employees, it vests that authority in a single executive agency, OPM. 5 U.S.C. § 8903. No statute or regulation authorizes the FPD to enter into health insurance contracts for its employees or to bind the United States to any such contract. Because the FPD does not have federal contracting

authority, I conclude that an order directing it to enter into separate contracts with private insurers would not be appropriate.

### B.   A monetary award pursuant to the Back Pay Act would be appropriate

Levenson also requests, in the alternative, an award of back pay for the period since he first attempted to enroll his spouse in his federal benefits plans. Under the EDR Plan, "back pay and associated benefits" may be awarded to a successful complainant if "the statutory criteria of the Back Pay Act, 5 U.S.C. § 5596, are satisfied." EDR Plan at A-13. The Back Pay Act provides that an employee

> who, on the basis of . . . an administrative determination . . . is found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee . . . is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect . . . an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred . . . .

5 U.S.C. § 5596(b)(1). The statute authorizes OPM to prescribe implementing regulations, but makes those regulations inapplicable to the judiciary. *Id.* § 5596(c). Accordingly, in analyzing whether "the statutory criteria . . . are satisfied," EDR Plan at A-13, I will look to the OPM regulations only as a guide.

### 1.  Appropriate authority

I begin by examining whether I am the "appropriate author-ity" to determine that a violation of Levenson's rights has occurred. *See* 5 U.S.C. § 5596(b)(1). Levenson, like most other employees of the federal judiciary,[7] has no remedies under the Civil Service Reform Act, is not covered by Title VII of the Civil Rights Act, and cannot bring a *Bivens* action to challenge unconstitutional discrimination in the workplace. *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *see also Dotson v. Griesa*, 398 F.3d 156, 173 (2d Cir. 2005). Instead, Levenson must resolve any employment dis-crimination claim through the procedures set forth in the EDR Plan, which "is intended to be the exclusive remedy of the employee . . . relating to rights enumerated under the Plan." EDR Plan at A-1.

Levenson took the appropriate steps to challenge the denial of spousal benefits under the EDR Plan, filing the current complaint only after counseling and mediation had failed. As the EDR hearing officer assigned to this matter, I have the responsibility for reviewing his complaint, holding any neces-sary hearings, and determining whether his rights under the EDR Plan have been violated. EDR Plan at A-10. Because the EDR process is the appropriate forum for Levenson's claim, and because I have been delegated the authority to rule on his claim pursuant to the procedures set forth in the EDR Plan, I conclude that I am the "appropriate authority" to make the determination as to whether Levenson's rights have been vio-lated.

---

[7]Federal Public Defender Organizations are established pursuant to 18 U.S.C. § 3006A(g)(2), which grants each United States Court of Appeals the authority to appoint and remove Federal Public Defenders. Attorneys employed by Federal Public Defender Organizations are employees of the judicial branch. *See Sullivan v. United States*, 21 F.3d 198, 202 (7th Cir. 1994).

### 2.    Eligibility for monetary relief

Under the Back Pay Act, the violation of an employee's rights creates entitlement to a monetary award only if it has caused "the withdrawal or reduction of all or part of [his] pay, allowances, or differentials" through a "personnel action" that was "unjustified or unwarranted." 5 U.S.C. § 5596(b)(1). Preliminarily, I might note that, in my view, the phrase "withdrawal or reduction" includes the term "withholding."

### a.    Pay, allowances, and differentials

OPM's regulations define "pay, allowances, and differentials" to include "pay, leave, and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. § 550.803. The commentary accompanying the regulations explains that "benefits received under the Federal employee health benefits . . . programs prior to retirement are employment benefits" falling within the scope of this definition. Rules and Regulations, Office of Personnel Management, 5 C.F.R. pt. 550, 46 Fed. Reg. 58,271, 58,272 (Dec. 1, 1981).

The ability to obtain health, dental, and vision care for one's family is a valuable benefit of employment; indeed, when employers and employees consider questions about appropriate compensation, health care is often a weightier issue than base rate of pay. Accordingly, I adopt OPM's interpretation that health benefits must be considered "pay, allowances, or differentials" as those terms are used in the Back Pay Act. I therefore conclude that the failure to enroll Levenson's spouse in his federal benefits plans has resulted in "the withdrawal or reduction of all or part of [his] pay, allowances, or differentials."

### b.    Personnel action

To satisfy the statutory criteria of the Back Pay Act, the withdrawal or reduction of pay, allowances, or differentials

must have occurred as the result of a "personnel action." 5 U.S.C. § 5596(b)(1). The definition of "personnel action" includes "the omission or failure to take an action or confer a benefit." *Id.* § 5596(b)(5). The failure to provide Levenson with spousal health insurance coverage, which is a valuable employment benefit, satisfies this definition.

### c. Unjustified or unwarranted

The Back Pay Act provides for relief if the personnel action that caused the withdrawal or reduction of pay, allowances or differentials was "unjustified or unwarranted." 5 U.S.C. § 5596(b)(1). Under OPM's regulations, an "unjustified or unwarranted" personnel action includes

> an act of omission (i.e., failure to . . . confer a bene-fit) that an appropriate authority subsequently deter-mines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law . . . or mandatory personnel policy established by an agency or through a collec-tive bargaining agreement.

5 C.F.R. § 550.803. Here, Levenson challenged the "failure to . . . confer" federal benefits to his spouse. Through the EDR process, I have found that the challenged personnel action constitutes discrimination on the basis of sex or sexual orien-tation. I reached that conclusion on the basis of both a "man-datory personnel policy" (the EDR Plan) and "applicable law" (the Constitution). Accordingly, I conclude that the denial of federal benefits to Levenson's spouse constitutes an "unjusti-fied or unwarranted personnel action" under the Back Pay Act.

### 3. Timing and extent of monetary relief

### a. Correction of the personnel action

The Back Pay Act states that an employee who suffers the withdrawal or reduction of pay, allowances, or differentials as

the result of an unjustified or unwarranted personnel action becomes eligible for a monetary award "on correction of the personnel action." 5 U.S.C. § 5596(b)(1). This criterion is satisfied upon the determination by an appropriate authority that the personnel action has violated the employee's rights and the issuance of an appropriate order to correct that action. Because I made such a determination and issued such an order on February 2, 2009, I conclude that Levenson is currently eligible for a back pay award.

### b. Period for which the personnel action is in effect

A back pay award may cover only the "period for which the personnel action was in effect," 5 U.S.C. § 5596(b)(1)(A), and "in no case may pay, allowances, or differentials be granted . . . for a period beginning more than 6 years before the date of the filing of a timely appeal or, absent such filing, the date of the administrative determination." *Id.* § 5596(b)(4).

The relevant period, for purposes of computing a back pay award, began on July 15, 2008, when Levenson first attempted to enroll his spouse in his federal benefits plans. That start date falls within the six-year statutory time limit, whether measured from the date of this order or my previous order. Although my previous order directed the correction of the wrongful denial of federal benefits to Levenson's spouse, that order has not yet been implemented; thus, it has not resulted in Levenson actually receiving the benefits to which he is entitled. Until Levenson begins to receive FEHBA and FEDVIP coverage for his spouse, as opposed to back pay, the unwarranted or unjustified personnel action remains in effect and he will be entitled to accrue back pay.

### c. Amount equal to the wrongfully denied benefits

Because Levenson has been found by an appropriate authority to have been affected by an unjustified or unwar-

ranted personnel action that resulted in the reduction of his employment benefits, he is now entitled to receive "an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred." 5 U.S.C. § 5596(b)(1).

Had Levenson been permitted to enroll his spouse in the federal benefits plans, Levenson would have received health, dental, and vision insurance covering him. While there is no obvious way to determine "an amount equal to" that coverage, I believe that the amount that it would have cost to obtain comparable coverage is likely to be the closest possible approximation.[8] On remand, the FPD in consultation with Levenson shall resolve that question and compute the amount due to date, as well as determine whether amounts that may accrue following the period covered by such payment shall be paid on a monthly, quarterly, or other basis.

### 4. Conclusion

I continue to retain jurisdiction over this matter so that I may resolve any disputes that may arise on remand and so that I may issue any further order that may be necessary.

———————————
Stephen Reinhardt
Circuit Judge

———————————

[8]This amount is not necessarily equivalent to the expenses that Levenson actually incurred for his spouse's health care during the relevant period; in fact, the EDR Plan expressly precludes an award of compensatory damages. EDR Plan at A-13. I recognize, in addition, that the insurance Levenson and Sears bought did not provide coverage as full as that provided through the FEHBA plan, and that it did not cover Sears's dental or vision care, for which the couple has been paying on an out-of-pocket basis. Finally, I recognize that it may not be possible to obtain precisely the same coverage in an individual policy that spouses are provided under the government's group policy.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.