In the Matter of Karen
**GOLINSKI* et ux.**

No. 09–80173.

United States Court of Appeals,
Ninth Circuit.

Nov. 19, 2009.

* While personnel matters are ordinarily confidential, Ms. Golinski has consented to the use of her name in this order.

Argued by Rita F. Lin, Morrison & Foerster LLP, San Francisco, CA, who was joined on the briefs by James R. McGuire, Morrison & Foerster LLP, San Francisco, CA, Jennifer C. Pizer, Lambda Legal Defense and Education Fund, Inc., Los Angeles, CA, for Karen Golinski.

## ORDER

ALEX KOZINSKI, Chief Judge.

Karen Golinski has been denied a benefit of federal employment because she married a woman rather than a man. I previously determined that violates this court's guarantee of equal employment opportunity. *See In re Golinski,* 2009 WL 2222884, at *1 (9th Cir. Jan. 13, 2009).**

---

** Because I rely on it as background for this order, I have directed my earlier order be published.

To avoid a difficult constitutional problem, I harmonized the Defense of Marriage Act (DOMA), 1 U.S.C. § 7; the statutes creating the benefit program at issue, the Federal Employees Health Benefits Program (FEHBP), 5 U.S.C. §§ 8901 *et seq.*; and this court's commitment to equal employment opportunity. *In re Golinski*, 2009 WL 2222884 at *1–3.

I then entered the following order:

The Director of the Administrative Office of the United States Courts is therefore ordered to submit Karen Golinski's Health Benefits Election form 2809, which she signed and submitted on September 2, 2008, to the appropriate health insurance carrier. Any future health benefit forms are also to be processed without regard to the sex of a listed spouse.

*Id.* at *3. No "party or individual aggrieved" by my decision appealed it. *See* U.S. Court of Appeals for the Ninth Circuit, *Employment Dispute Resolution Plan* 9 (1997) (hereinafter *EDR Plan*).

The Administrative Office of the United States Courts (AO) complied with my order and submitted Ms. Golinski's form 2809 to the Blue Cross and Blue Shield Service Benefit Plan, Ms. Golinski's health insurance carrier. That's as it should be; the AO is subject to the "supervision and direction" of the Judicial Conference of the United States, 28 U.S.C. § 604(a), and I exercised authority delegated by the Judicial Conference when I ordered relief.[1]

After the AO submitted Ms. Golinski's form, I thought this matter had concluded. *See* 5 C.F.R. § 890.104.

The Executive Branch, acting through the Office of Personnel Management (OPM), thought otherwise. It directed the insurance carrier not to process Ms. Golinski's form 2809, thwarting the relief I had ordered. *See* Letter from Lorraine E. Dettman, Assistant Dir., Ins. Servs. Programs, U.S. Office of Pers. Mgmt., to Nancy E. Ward, Deputy Assistant Dir., Office of Human Res., Admin. Office of U.S. Courts (Feb. 20, 2009) (attached herewith as Exhibit A). I must now decide what further steps are necessary to protect Ms. Golinski and the integrity of the Judiciary's EDR plans.

### Retrospective Relief

Ms. Golinski has requested an award under the Back Pay Act. 5 U.S.C. §§ 5595 *et seq.* This court's EDR plan provides that relief under the Back Pay Act is available, *EDR Plan* at 9–10; *see Dotson v. Griesa*, 398 F.3d 156, 175 (2d Cir.2005); *Blankenship v. McDonald*, 176 F.3d 1192, 1195(9th Cir.1999), and I must resolve any claim for such relief in the first instance. *EDR Plan* at 3.

■ There's no doubt the Act entitles judicial employees to back pay, 5 U.S.C. § 5596(a)(2), but I am aware of no prior determination as to what showing they must make to receive an award.[2] I con-

---

**1.** This court's EDR plan was adopted at the direction, and with the approval, of the Judicial Conference of the United States, *see* Judicial Conference of the United States, *Model EDR Plan*, ch. I, § 1 (hereinafter *Model EDR Plan*); *EDR Plan* at 1, as part of the tradition of decentralized administration and local management of the federal courts. Judicial Conference of the United States, *Study of Judicial Branch Coverage Pursuant to the Congressional Accountability Act of 1995* 2–3

(1996). Judicial officers acting pursuant to our EDR plan have the responsibility and authority "to provide the rights, protections, and remedies" to judicial employees enjoyed by congressional employees, and do so in the name of the Judicial Conference. *See id.* at 15.

**2.** I have no controlling precedent on which to rely. OPM's regulations don't apply of their own force, 5 U.S.C. § 5596(c), and this claim doesn't arise under the jurisdiction of the

clude they must prove three things: (1) there has been a "personnel action"; that (2) is "unjustified or unwarranted"; and (3) results in a "withdrawal or reduction of all or part of [the employee's] pay, allowances, or differentials." *Id.* § 5596(b)(1).

■ 1. The Back Pay Act defines a personnel action to include "the omission or failure to take an action to confer a benefit." *Id.* § 5596(b)(5). It also covers "a decision concerning pay [or] benefits." *Id.* § 2302(a)(2)(A)(ix). Refusing to provide Ms. Golinski with health insurance for her wife satisfies either definition.

2. I find OPM's definition of the phrase "unjustified or unwarranted personnel action" persuasive. For purposes of this court's EDR plan I therefore define that phrase to mean:

> [A]n act of commission or an act of omission (i.e., failure to take an action or confer a benefit) that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, Executive order, rule, regulation, or mandatory personnel policy established by an agency or through a collective bargaining agreement. Such actions include personnel actions and pay actions (alone or in combination).

5 C.F.R. § 550.803. The "agency" here is the United States Court of Appeals for the

Ninth Circuit, 5 U.S.C. § 5596(a)(2); 28 U.S.C. § 610, and I conclude that denying an employee a benefit based on her sex or sexual orientation violates one of our "mandatory personnel policies." *See EDR Plan* at 2.

■ 3. I also find OPM's definition of "pay, allowances, and differentials" persuasive. I therefore determine that the Act covers "pay, leave, and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. § 550.803. The commentary to that regulation says it includes "benefits received under the Federal employee health benefits and group life insurance programs," 46 Fed.Reg. 58,-271, 58,272 (Dec. 1, 1981), so I conclude spousal health insurance benefits qualify. As Ms. Golinski has been denied the benefit of insuring her wife, Amy Cunninghis, her "pay, allowances, [or] differentials" have been "withdraw[n] or reduc[ed]." [3]

4. Based on the above, I conclude Ms. Golinski is entitled to an award under the Back Pay Act, and I refer this matter to the Appellate Commissioner to determine its amount. Within 70 days the Commissioner shall forward to me, with copies to the parties, a report and recommendation as to the award I should enter (including attorneys' fees and any other monetary

---

Court of Federal Claims, the Federal Circuit, the Merit System Protection Board (MSPB) or a similar entity charged with interpreting the Act. The body with supervisory jurisdiction over this proceeding—the Judicial Council of the Ninth Circuit—has not, so far as I know, had occasion to interpret the Act. Nor am I aware of any similar rulings from other circuits' Judicial Councils or the Judicial Conference of the United States. My analysis is, however, consistent with that in a recent order of another EDR tribunal in the Ninth Circuit. *See In re Levenson*, No. 09–80172,

587 F.3d 925, 935–37, 2009 WL 3878233 (9th Cir. Nov. 18, 2009).

**3.** I also conclude that my prior order qualifies as a "correction of the personnel action," 5 U.S.C. § 5596(b)(1)(A), for purposes of the Back Pay Act. Denying back pay simply because a remedial decree has been frustrated would be inequitable. In any event, I see no reason that back pay cannot be awarded contemporaneously with a corrective action. *See Robinson v. Dep't of the Army*, 21 M.S.P.R. 270, 272–73 (1984).

award to which Ms. Golinski may be entitled under the Act).

Because Ms. Golinski has already waited too long for relief, I wish to avoid the need for additional proceedings to determine the amount of her award. I therefore offer the Commissioner the following guidance: Compensatory damages aren't recoverable under this court's EDR plan, *EDR Plan* at 10, so Ms. Golinski is entitled only to an award equal in amount to the benefits she would have received, but has been denied, under the FEHBP, regardless of whether she's spent more (or less) on insurance in the interim. I determine the relevant measure of those benefits to be the cost of obtaining comparable private insurance for her wife, *see* 5 U.S.C. § 5596(b)(1)(A)(i), which the Commissioner should calculate on a monthly basis for the relevant period(s) of time.

**Prospective Relief**

■ An award of back pay only compensates Ms. Golinski for discrimination she's suffered until today. I have no reason to believe that this discrimination will cease without further action on my part, so I also consider whether to grant prospective relief as well. There are three options: (1) again order enrollment of Ms. Golinski's wife in a FEHBP insurance plan without regard to her sex; (2) enter an order prospectively awarding back pay to Ms. Golinski, payable on some regular basis, until she is permitted to enroll her otherwise-eligible spouse for insurance benefits; or (3) do nothing and leave Ms. Golinski with the burden of filing a new complaint every time she would like to purchase health insurance for her wife.

The third option is clearly inappropriate. Forcing an employee to endlessly litigate the same claim would be unjust and wasteful of the court's EDR resources. No doubt to avoid that very result, the EDR plan specifically authorizes an order designed to "prospectively insur[e] compliance" with this court's guarantee of equal employment opportunity. *EDR Plan* at 9. To do nothing in this case would read that language out of the plan.

I consider the second option inappropriate because it would be a colossal waste of taxpayer money. Unlike the employee in *In re Levenson*, Ms. Golinski is already signed up for a family plan to cover the child of the marriage. Adding her wife's name to the plan would cost the government nothing, *see In re Levenson*, No. 09–80172, slip op. at 15550–51 & n.6, while providing prospective relief in the form of substitute insurance coverage would be expensive.

Also, it might be impossible to find an insurance plan on the private market that provides exactly the same benefits as provided under the FEHBP. Group plans almost always provide broader coverage than individual plans. I must consider the hassle and expense of finding such a plan, even if it does exist, as well. I am also uncertain whether "prospective" back pay would put Ms. Golinski in a position as advantageous as if her wife were covered by premiums that are automatically deducted, pre-tax, from her paycheck. And, even if those mundane concerns weren't present, there is an inherent inequality in allowing some employees to participate fully in the FEHBP, while giving others a wad of cash to go elsewhere. Even if the destination is the same, it's still the back of the bus.

The EDR plan provides that I may order a "necessary and appropriate" remedy for workplace discrimination. *EDR Plan* at 9. For the discrimination she's suffered in the past, I can offer Ms. Golinski only money. The remedy that's "appropriate" for the future, however, is enrollment of Ms. Golinski's wife into the same program

an opposite-sex spouse would enjoy. I see no justification for giving Ms. Golinski a lesser remedy at substantial taxpayer expense when she can have a full remedy at zero cost to the taxpayers.

■ My authority to order such relief is clear under the language of the EDR plan. *Id.* at 1, 9–10. However, OPM's actions in this case suggest that further explanation is "necessary." Ordering enrollment is proper and within my jurisdiction because Congress intended this tribunal to be the sole forum for adjudicating complaints of workplace discrimination by employees of the Judiciary. With that responsibility must come power equal to the task.

■ 1. Congress has decided that the Judiciary's EDR tribunals are the only forum where judicial employees may seek redress for unlawful personnel actions. *See Dotson,* 398 F.3d at 171–76; *Blankenship,* 176 F.3d at 1195; *Lee v. Hughes,* 145 F.3d 1272, 1276 (11th Cir.1998). Our employees can't appeal to the MSPB,[4] they have no *Bivens* action and they aren't provided remedies by the Civil Service Reform Act or state law. *See, e.g., Dotson,* 398 F.3d at 171–76. If a judicial employee suffers an unjustified personnel action, such as being fired on account of race, sex or religion, the only remedy possible would come from an EDR tribunal. Our EDR tribunals must therefore have the authority to grant full relief, including reinstatement (or other prospective relief) and back pay. If that's not true, judicial employees who are victims of discrimination would have no remedy at all.

2. OPM's actions implicate an even more fundamental concern: the autonomy and independence of the Judiciary as a co-equal branch of government. In effect, OPM has claimed that its interpretations of the rights and benefits of judicial employees are entitled to supremacy over those of the Judiciary. That's incorrect, and the Executive must henceforth respect the Judiciary's interpretation of the laws applicable to judicial employees. Any other result would prevent the Judiciary from "accomplishing its constitutionally assigned functions," *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), by seriously undermining our autonomy over personnel matters. "While it may be convenient to have the personnel system of [the Judiciary] covered by the personnel management network of the executive branch, it is contrary to the doctrine of separation of powers." H.R. Rep. 101–770(I), at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1709, 1710.

OPM has a duty to take care that the laws be faithfully executed, but it may not disregard a coordinate branch's construction of the laws that apply to its employees. No less than the other branches of government, the Judiciary is dependent on people to carry out its mission. Barring us from determining, within reasonable bounds, the rights and duties of our personnel under the laws providing for their employment would make us a "handmaiden of the Executive." *United States v. Smith,* 899 F.2d 564, 569 (6th Cir.1990). The power both to interpret and execute a law is the power to control those governed by it. *Cf.* The Federalist No. 47 (James Madison).

Concern about such a fate is particularly acute for the Judicial Branch. We rely on

---

4. Had my original order come from the MSPB, there would have been no question that it would have had to be obeyed. *See* 5 U.S.C. § 1204(a)(2); *Kerr v. NEA,* 726 F.2d 730, 733 (Fed.Cir.1984). Our EDR tribunals take the place of the MSPB for judicial employees, so it makes sense that Congress gave our EDR tribunals powers coextensive with those of the MSPB.

Congress to fund and the Executive to carry out many aspects of our day-to-day operations. GSA manages the buildings where we work, Treasury cuts our checks, U.S. Marshals provide our security and OPM administers our employee benefits programs. But if the theory of separate powers means anything, it's that the Executive cannot use its dominance over logistics to destroy our autonomy. Would we permit OPM to interpret a statute so as to require us to racially discriminate in what we pay our employees? Could the U.S. Marshals refuse to protect our courthouses because they disagree with our decisions? May the Treasury refuse to cut paychecks to judicial employees it believes are not suitable for their positions?

That those rights are not in question here is irrelevant. The power the Executive has arrogated to itself in this case would be enough to sustain those actions as well. Nor is it any answer that OPM could set out a plausible interpretation of the law to support its actions in this case.[5] Some branch must have the final say on a law's meaning. At least as to laws governing judicial employees, that is entirely our

duty and our province. We would not be a co-equal branch of government otherwise.

History reveals that Congress intended the Judiciary to have, like Congress itself, the authority to manage its own personnel and to adjudicate workplace complaints.[6] Until the Congressional Accountability Act of 1995(CAA), none of the major workplace protection laws applied to congressional employees; Congress worried that applying those laws to itself would grant the Executive too much power over its affairs. *See generally* Harold H. Bruff, *That the Laws Shall Bind Equally On All: Congressional and Executive Roles in Applying Laws to Congress*, 48 Ark. L.Rev. 105, 120 (1994). The CAA solved this problem by creating a special legislative branch agency called the Office of Compliance. *Id.* at 158. That office, rather than the Executive, enforces the workplace protection laws that the CAA extended to Congress.

"Congress initially considered extending the[CAA's] coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately de-

---

5. In fact, the more a law the Executive administers is open to interpretation, the greater the separation-of-powers concerns. It is only because OPM has broad power to administer a grant of somewhat nebulous authority to contract for health insurance that the question I confront today arises: As between the Executive and the Judiciary, whose interpretation of the law should control for judicial employees? If Congress had spoken clearly on the scope of FEHBP coverage, there would be nothing to interpret and therefore no potential for conflicting interpretations.

6. Take, for example, the Administrative Office of the United States Courts Personnel Act of 1990, Pub.L. 101–474, 104 Stat. 1097. The accompanying report by the House noted that the AO was, at the time of the act, "to a large extent ... subject to the control of the executive branch in personnel matters." H.R. Rep. 101–770(I), at 6 (1990), *reprinted in* 1990

U.S.C.C.A.N. 1709, 1710. In contrast, "[t]he United States courts, which [the AO] serves, ... are mostly free of such Executive Branch supervision." *Id.* In order to correct that asymmetry, Congress determined that the "authority granted under such law to the Equal Employment Opportunity Commission (EEOC), the Office of Personnel Management (OPM), the Merit System Protection Board (MSPB), or any other agency in the executive branch, shall be exercised by the Administrative Office." *Id.* at 1712. No mention of such a power for the courts was necessary. Our authority, part statutory and part inherent, to control matters that touch on the operation of the courts was recognized long before those agencies existed. *See, e.g., Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *In re Hennen*, 38 U.S. (13 Pet.) 230, 261–62, 10 L.Ed. 138 (1839).

cided against such action." *Dotson,* 398 F.3d at 173. Instead, it asked us to report on our efforts to adopt the CAA's standards voluntarily. 2 U.S.C. § 1434. The Judicial Conference of the United States submitted that report in 1996, telling Congress: "The judicial branch is committed to providing the general protections of the CAA laws in a manner that preserves judicial independence and the decentralized administration of the federal courts." *Study of Judicial Branch Coverage, supra* note 1, at 2. As part of that commitment, the Judicial Conference reported that it was developing "a plan to provide the rights, protections, and remedies similar to those provided in the CAA." *Id.* at 15. That plan became the *Model EDR Plan, supra* note 1, under which this court adopted, and the Judicial Council of the Ninth Circuit approved, the EDR plan that controls these proceedings.

■ Congress took no further action, so it must have been satisfied with the Judiciary's efforts. OPM's actions in this case have undermined the balance Congress struck in the CAA, and have done so in a way that threatens the independence of Congress's Office of Compliance as much as that of our EDR tribunals. I don't believe Congress intended to grant OPM that authority. Instead, I hold the CAA's reporting provision recognized the Judiciary's inherent authority to resolve workplace complaints without interference by the Executive. I therefore conclude that an EDR tribunal's reasonable interpretation of a law applied to judicial employees must displace, for purposes of those employees, any contrary interpretation by an agency or officer of the Executive.

■ I have determined that, even as limited by DOMA, the FEHBP permits judicial employees to provide health insurance coverage to their same-sex spouses. *See In re Golinski,* 2009 WL 2222884 at

*1–3. This court's non-discrimination plan requires that Ms. Golinski be afforded that benefit. *EDR Plan* at 2. OPM had, and has, no authority to conclude otherwise.

## Order

I order as follows:

(1) This matter is referred to the Appellate Commissioner for a hearing on Ms. Golinski's claim under the Back Pay Act. Within 70 days, he shall submit a report and recommendations on the factual issues listed above. *See* p. 959–60 *supra.*

(2) Within 30 days, the Administrative Office of the United States Courts shall re-submit Ms. Golinski's Health Benefits Election form 2809 to her designated insurer, the Blue Cross and Blue Shield Service Benefit Plan. The AO shall process any future benefit forms without regard to the sex of the listed spouse. *See* p. 960–61 *supra.*

(3) Within 30 days, the Office of Personnel Management shall rescind its guidance or directive to the Blue Cross and Blue Shield Service Benefit Plan and any other plan that Ms. Golinski's wife is not eligible to be enrolled as her spouse under the terms of the Federal Employees Health Benefits Program because of her sex or sexual orientation, and that the plans would violate their contracts with OPM by enrolling Ms. Golinski's wife as a beneficiary. *See* pp. 958–59, 960–63 *supra.*

(4) The Office of Personnel Management shall cease at once its interference with the jurisdiction of this tribunal. Specifically, OPM shall *not* advise Ms. Golinski's health plan, the Blue Cross and Blue Shield Service Benefit Plan, that providing coverage for Ms. Golinski's wife violates DOMA or any other federal law. Nor shall OPM interfere in any way with the delivery of health benefits to Ms. Golinski's wife on the basis

of her sex or sexual orientation. *See* pp. 958–59, 960–63 *supra.*

(5) The Blue Cross and Blue Shield Service Benefit Plan shall enroll Ms. Golinski's wife within 30 days of receipt of the appropriate forms from the Administrative Office of the United States Courts without regard to her sex or sexual orientation.

I authorize Ms. Golinski to take appropriate action to secure compliance with this order, such as by petition for enforcement or mandamus. I trust, however, that such action will not be necessary.

The Clerk shall send this order to the Administrative Office of the United States Courts and serve the order and a copy of our EDR plan on the Office of Personnel Management and the Blue Cross and Blue Shield Service Benefit Plan in the manner described by Fed.R.Civ.P. 4(h), (i). If OPM or Blue Cross wishes, it may appeal so much of this order as concerns it using the procedures outlined in the plan. *See EDR Plan* at 9; *Dep't of Agric., Food and Nutrition Servs. v. FLRA,* 879 F.2d 655, 658–59 (9th Cir.1989), *vacated in part on other grounds,* 895 F.2d 1239 (9th Cir. 1990). Any other individual or party aggrieved by this proceeding may similarly appeal.

## EXHIBIT A

Human Resources
Products and Services
Division

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

**FEB 2 6 2009**

Ms. Nancy E. Ward
Deputy Assistant Director
Office of Human Resources
Administrative Office of the United States Courts
Washington, D.C. 20544

Dear Ms. Ward:

We have recently been contacted by officials of the Kaiser Foundation Health Plan and the Blue Cross and Blue Shield Service Benefit Plan regarding enrollment forms, and Orders from the U.S. Court of Appeals for the Ninth Circuit, submitted by your office. The intent of the enrollment forms was to provide health benefits coverage for the same-sex spouses of Mr. Brad Levenson and Ms. Karen Golinski.

As you are aware, Title 5, chapter 89 of the United States Code governs the Federal Employees Health Benefits (FEHB) Program. It provides for coverage of the employee and members of the employee's family. Members of the family are defined in the law, and include only certain unmarried dependent children and the spouse of the eligible employee or annuitant. P.L. 104-199, the Defense of Marriage Act (DOMA) requires an agency when interpreting an Act of Congress, to define the word "spouse" as a person of the opposite sex who is a husband or a wife. OPM issued guidance to agencies regarding the definitions of "marriage" and "spouse" in Benefits Administration Letter 96-111, dated November 15, 1996. This Letter is available on the OPM web site at http://www.opm.gov/retire/pubs/bals and remains in effect. Officials of agencies participating in the Federal benefits programs administered by OPM must follow the guidance provided in the Letters.

Because of the provisions of the FEHB law, as further defined by DOMA, Plans in the FEHBP may not provide coverage for domestic partners, or legally married partners of the same sex, even though recognized by state law.

Ms. Nancy E. Ward                                                        2

We have advised Kaiser Foundation Health and the Blue Cross and Blue Shield Service Benefit Plans that they may not accept the enrollment forms submitted by your agency to provide coverage that is not allowed under Federal law.

If you have any questions, you may reach me at (202) 606-4762.

Sincerely,

Lorraine E. Dettman
Assistant Director
Insurance Services Programs

cc:  Kaiser Foundation Health Plan
     Blue Cross and Blue Shield Service Benefit Plan