**Alfredo SEMPER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 10–616C.

United States Court of Federal Claims.

Sept. 27, 2011.

Andrew C. Simpson, Andrew C. Simpson, P.C., Christiansted, VI, for the plaintiff.

Dawn E. Goodman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for the defendant. With her were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division.

## OPINION

HORN, Judge.

The plaintiff, Alfredo Semper, filed a complaint, followed by an amended complaint, in the United States Court of Federal Claims. Plaintiff claims that he was wrongfully terminated from his position as a probation officer by his employer, the United States District Court of the Virgin Islands. Plaintiff claims entitlement to back pay under the Back Pay Act, 5 U.S.C. § 5596 (2006), as well as pursuant to 18 U.S.C. § 3602 (2006) and 18 U.S.C. § 3672 (2006). Plaintiff also seeks reinstatement to his former position as a probation officer and requests unspecified monetary damages. Mr. Semper alleges that his termination violated 18 U.S.C. § 3602(a), which prohibits the discharge of a probation officer unless the termination is "for cause." In addition, Mr. Semper argues that the United States District Court of the Virgin Islands failed to afford him a hearing when he was terminated, in violation of the due process afforded him under the United States Consti-

tution. According to the plaintiff, "[t]he District Court of the Virgin Islands does not have an administrative remedy available to employees claiming wrongful termination." Therefore, Mr. Semper asserts, the United States Court of Federal Claims has the "appropriate authority" to determine whether his constitutional and statutory rights were violated under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), the Due Process clause of the United States Constitution, the Back Pay Act, 5 U.S.C. § 5596(a)(2), as well as 18 U.S.C. § 3602(a) and 18 U.S.C. § 3672.

Defendant has moved to dismiss the plaintiff's claims for lack of subject matter jurisdiction or, alternatively, for failure to state a claim on which relief can be granted. Arguing that this court does not have jurisdiction to review Mr. Semper's claims, the defendant also states that, even if this court has jurisdiction to entertain Mr. Semper's claims, plaintiff has not identified a money-mandating source that entitles him to relief. Nor, according to the defendant, does this court have the authority to order that plaintiff be reinstated to his former position as a probation officer.

In his amended complaint, Alfredo Semper alleges the following facts in support of his claims. Mr. Semper was employed as a probation officer in the United States District Court of the Virgin Islands from 2001–2010. He was terminated from his employment on August 6, 2010. Prior to his termination, on August 20, 2009, the Probation Office of the United States District Court of the Virgin Islands was assigned to monitor the pretrial release of Luis Roldan. Plaintiff alleges that Probation Officer Brian A. Smith was the probation officer actually assigned to supervise Mr. Roldan during his pretrial release, and that plaintiff only assisted Probation Officer Smith in supervising Mr. Roldan. According to the amended complaint, on July 3, 2010, Mr. Roldan was found dead in an abandoned housing project and the cause of death was homicide. Mr. Semper alleges that on August 6, 2010, Chief Probation Officer Denise L. Donadelle–DeCosta terminated Mr. Semper's employment with the approval of the Chief Judge of the United States District Court of the Virgin Islands. According to

the amended complaint, the stated basis for Mr. Semper's termination was that he had been extremely negligent regarding the supervision of Mr. Roldan. Mr. Semper alleges that prior to his termination, he was not informed of the facts that led to his termination other than "conclusory statements," nor was he given a hearing. According to the plaintiff, had he been afforded a hearing, he could have demonstrated that he was not the probation officer assigned to supervise Mr. Roldan, and that he had not been negligent in handling the Roldan case.

## DISCUSSION

 "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)) (omission in original), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976); *see also Inter–Coastal Xpress, Inc. v. United States,* 296 F.3d 1357, 1365–66 (Fed.Cir.2002). " '[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)); *see also Ford Motor Co. v. United States,* 635 F.3d 550, 556 (Fed.Cir.2011) (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235) ("[I]ssues implicating subject matter jurisdiction 'can never be forfeited or waived.'"). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki,* —— U.S. ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend,* —— U.S. ——, 130 S.Ct. 1181, 1193, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing *Arbaugh v. Y*

*& H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235)). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte,* even where, as here, neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1369 (Fed.Cir.2004) (citing *Textile Prods., Inc., v. Mead Corp.,* 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g and en banc suggestion denied* (Fed. Cir.), *cert. denied,* 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 58 (1998)), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. dismissed as improvidently granted,* 548 U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006); *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990))); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *see also Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998))); *Pikulin v. United States,* 97 Fed.Cl. 71, 76, *appeal dismissed,* 425 Fed.Appx. 902 (Fed. Cir.2011); *Griffin v. United States,* 96 Fed. Cl. 1, 4 (2010), *motion to amend denied* (2011).

A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(1), (2) of the Rules of the United States Court of Federal Claims (2011); Fed.R.Civ.P. 8(a)(1),

(2) (2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir. 1997); *see also Klamath Tribe Claims Comm. v. United States,* 97 Fed.Cl. 203, 208 (2011); *Gonzalez–McCaulley Inv. Grp., Inc. v. United States,* 93 Fed.Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)). As stated in *Ashcroft v. Iqbal,* "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly,*] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal,* 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955 (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Samish Indian Na-*

*tion v. United States,* 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003), *Robinson v. United States,* 95 Fed.Cl. 480, 483 (2011).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation,* 556 U.S. 287, ——, 129 S.Ct. 1547, 1551, 173 L.Ed.2d 429 (2009); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *see also Chattler v. United States,* 632 F.3d 1324, 1330 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir. 2011); *Greenlee Cnty., Ariz. v. United States,* 487 F.3d 871, 875 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir. 2007), *cert. denied,* 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed. Cir.1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298 (Fed.Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S. [Corp. v. United States,* 178 Ct.Cl. 599,] 372 F.2d [1002,] 1007–08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket' " (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954)))…. Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S. [Corp. v. United States],* 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.*; *see also [United States v.] Testan,* 424 U.S. [392,] 401–02, 96 S.Ct. 948 ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " (quoting *Eastport S.S. [Corp. v. United*

*States*], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute. *Ontario Power Generation, Inc. v. United States*, 369 F.3d at 1301.

■ To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon " 'can fairly be interpreted as mandating compensation by the Federal Government.' " *United States v. Navajo Nation*, 556 U.S. at ——, 129 S.Ct. at 1552 (quoting *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe*, 537 U.S. at 472, 123 S.Ct. 1126; *United States v. Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961; *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed.Cir.2008), *cert. denied*, 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. *See United States v. Navajo Nation*, 556 U.S. at ——, 129 S.Ct. at 1551 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts).")." " 'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.' " *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1308 (Fed.Cir.2008) (quoting *Greenlee Cnty., Ariz. v. United States*, 487 F.3d at 876); *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); *Peoples v. United States*, 87 Fed.Cl. 553, 565–66 (2009).

It is undisputed by the parties that probation officers are employees of the judicial branch. As explained by the United States Court of Appeals for the Second Circuit:

It is well understood that "United States probation officers serve as officers of the court. . . ." Supervision of Federal Offenders, Monograph 109, Probation and Pretrial Services Division, Administrative Office of the United States Courts, August 11, 1993 ("Supervision of Federal Offend-

ers"), at 1. In fact, since "[t]he United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court[,] . . . it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch." *United States v. Inserra*, 34 F.3d 83, 88 (2d Cir.1994); *see also* 18 U.S.C. § 3602(a) ("A district court of the United States shall appoint qualified persons to serve . . . as probation officers within the jurisdiction and under the direction of the court making the appointment."). In his capacity of confidential adviser to the court, the federal probation officer has been regarded as "the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court." Bunzel, [Sharon M. Bunzel, The Probation Officer and The Federal Sentencing Guidelines: Strange Philosophical Bedfellows, 104 Yale L.J. 933], at 945 [ (1995) ].

*United States v. Reyes*, 283 F.3d 446, 455 (2d Cir.), *cert. denied*, 537 U.S. 822, 123 S.Ct. 106, 154 L.Ed.2d 31 (2002) (omissions in original); *see also Thompson v. MSPB*, 433 F.3d 827, 828 (Fed.Cir.2006); *United States v. Stephens*, 439 F.3d 1083, 1084 (9th Cir.2006); *United States v. Bruce*, 396 F.3d 697, 720 (6th Cir.) (quoting *United States v. Reyes*, 283 F.3d at 455) (" '[I]t is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch.' "), *vacated in part on other grounds*, 405 F.3d 1034 (6th Cir.), *cert. denied*, 546 U.S. 954, 126 S.Ct. 466, 163 L.Ed.2d 354 (2005).

Defendant's motion to dismiss is directed, in large part, to a somewhat convoluted argument based on determining whether or not plaintiff, a judicial branch employee, is a member of the "excepted service," under the Civil Service Reform Act (CSRA) of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978), *codified at* various sections of Title 5 of the United States Code, which leads defendant to the conclusion that plaintiff is not entitled to appeal his termination to the Merit Systems Protection Board (MSPB) or to a federal court. As a result, defendant relies heavily on the holding in *United States v. Fausto*,

484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), which addressed the CSRA as it applied to an executive branch employee of the Department of the Interior, United States Fish and Wildlife Service. *See id.* at 441, 108 S.Ct. 668. Defendant argues that, following the *Fausto* opinion, "this Court does not possess jurisdiction to entertain" Mr. Semper's complaint because the CSRA is the "exclusive remedy" for federal employees to challenge "adverse personnel actions, such as termination and removal, regardless of whether the adverse action is taken against an excepted service employee."

Defendant asserts that, "[s]ince the holding in *Fausto,* the United States Court of Appeals for the Federal Circuit has repeatedly held that *Fausto* stands for the proposition that this Court [the United States Court of Federal Claims] does not possess jurisdiction to entertain challenges to the 'types of adverse personnel actions specifically covered by the CSRA.'" (quoting *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991)). Defendant argues that "Mr. Semper is challenging the termination of his employment for unacceptable job performance, specifically, for negligent supervision of a criminal defendant on probation. This is the type of personnel action covered by the CSRA—and, therefore, the type of adverse personnel action that this Court does not possess jurisdiction to entertain." (internal citations omitted).

Mr. Semper does not agree that the CSRA is the proper analytical construct by which this court should evaluate his claims. Plaintiff states: "As a judicial employee, plaintiff is not protected by the Civil Service Reform Act," therefore, plaintiff argues that "the reasoning of *Fausto* is inapplicable to employees of the judicial branch." Plaintiff states that "[t]he CSRA neither created remedies for judicial (or legislative) branch employees nor replaced existing remedies available to such employees." Plaintiff also asserts that "[t]he CSRA was comprehensive legislation that reformed the rights and remedies of *executive branch* employees of the United States government. The CSRA established executive branch agencies that had jurisdiction over executive branch employees

in matters regarding discipline, grievances, remedies and pay." (emphasis in original). Plaintiff further contends that with the enactment of the CSRA, Congress did not intend to supplant prior remedies for judicial branch employees, as "application of the CSRA to judicial employees would have resulted in a system in which the executive branch, through the MSPB and OPM [United States Office of Personnel Management], would have exercise [sic] a significant level of control over the operations of the judicial branch." Plaintiff, therefore, argues that although judicial employees are not covered by the CSRA, the CSRA also "does not deprive this Court of jurisdiction over his claim."

Although plaintiff acknowledges in his filings with the court that "Federal judges have traditionally enjoyed unfettered discretion to discharge their employees because those employees are generally considered to be at-will employees," plaintiff alleges that: "[i]n 1984, Congress made a deliberate decision to limit the judiciary's power to terminate probation officers by specifying that a probation officer could only be terminated 'for cause.' This protection was extended *only* to probation officers, thus giving probation officers unique status within the judicial branch." (citing 18 U.S.C. § 3602(a)) (emphasis in original). Plaintiff also acknowledges that, despite the development by the Administrative Office of the United States Courts and adoption by the Judicial Conference in 1993 of a Model Adverse Action Procedure for Removal of a Probation Officer, the procedure was not adopted by the United States District Court of the Virgin Islands.

█ In relying so heavily on the framework of the CSRA, defendant adopts the terminology of the CSRA and does not fully resolve this judicial branch employee's termination allegations. Although acknowledging the difference in the status of judicial employees, compared with executive branch employees, defendant tries to wedge judicial branch employees into the structure of the CSRA and argues that, "this Court does not possess jurisdiction to entertain this case because removal is an action covered by the CSRA regardless of the fact that the CSRA does not afford judicial employees the right

to judicial review of termination decisions." Defendant further asserts:

> It is undisputed that Mr. Semper, as a judicial employee, is excepted from the CSRA. The CSRA specifically defines "civil service" employees as encompassing "all appointive positions in the executive, *judicial,* and legislative branches of the Government of the United States, except positions in the uniformed services." 5 U.S.C. § 2101(1). However, the CSRA specifically states that the right to administrative and judicial review of adverse personnel actions is not available to all civil service employees; rather, it is available only to members of the competitive service. 5 U.S.C. § 2103. Judicial employees are not part of the competitive service. 5 U.S.C. § 2102. In other words, judicial employees, are in the category of excepted employees. (emphasis in original).

Moreover, just because judicial branch employees are not part of the "competitive service," however, does not mean that they are automatically part of the "excepted service" for purposes of application of the CSRA. In *Fausto,* the Supreme Court explained the focus on the executive branch in the CSRA. *See generally United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668. Addressing the rights of an executive branch, Department of the Interior employee, the Supreme Court wrote: "Two structural elements important for present purposes are clear in the framework of the CSRA: First, the preferred position of certain categories of employees-competitive service employees and 'preference eligibles' (veterans)," and "[t]he second structural element is the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review. This enables the development, through the MSPB, of a *unitary and consistent Executive Branch position* on matters involving personnel action, avoids an 'unnecessary layer of judicial review' in lower federal courts, and '[e]ncourages more consistent judicial decisions....'" *United States v. Fausto,* 484 U.S. at 449, 108 S.Ct. 668 (quoting S.Rep. No. 95–969, at 52, *reprinted at* 1978 U.S.C.C.A.N. 2723, 2774 (1978)) (other citations omitted and emphasis added).

As agreed by both parties, Mr. Semper was not an executive branch employee. As an employee of the judicial branch, he was not entitled under the CSRA to submit an appeal of his termination to the MSPB or to a federal court for resolution. The choice by Congress in the CSRA regarding which employees to include, or not include, as eligible to pursue employment adverse action at the MSPB or in the courts was "a considered congressional judgment." *United States v. Fausto,* 484 U.S. at 448–49, 108 S.Ct. 668. As noted by the United States Court of Appeals for the Federal Circuit, "[t]he CSRA, by its terms, however, does not encompass every adverse personnel action against a federal employee." *Hall v. United States,* 617 F.3d 1313, 1316 (Fed.Cir.2010); *see also Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1999). In fact, simply stated, there is no statute or regulation which gives federal employees in branches other than the executive branch, including judicial employees, adverse action recourse to appeal an employment termination decision in the federal courts.

There is limited case law resolving lawsuits brought by judicial branch employees challenging adverse actions in the federal courts, most likely because it is widely acknowledged that judicial review is not generally available for such actions, save for enforcement of the constitutional protections afforded all citizens. Perhaps in order to utilize an available remedy, such as the CSRA, rather than acknowledge a void and the absence of an available construct, a few courts have analyzed claims brought by judicial branch employees by referring to the structure of the CSRA. For example, in *Thompson v. Merit Systems Protection Board,* 433 F.3d 827, the United States Court of Appeals for the Federal Circuit indicated that a probation office employee of the federal courts in the District of Columbia had no right to appeal to the MSPB, stating that "[t]he terms 'competitive service' and 'excepted service'[1] are limited,

---

1. The statute at 5 U.S.C. § 2102(a) (2006) states that:

with a few exceptions, to positions in the executive branch." *Id.* at 828 (citing 5 U.S.C. § 2102(a) (2006)) (footnote omitted). In *Hartman v. Merit Systems Protection Board,* 77 F.3d 1378 (Fed.Cir.1996), the United States Court of Appeals for the Federal Circuit reviewed a decision by the MSPB which stated that because a Deputy Clerk for a United States District Court for the Eastern District of Tennessee was an employee, not of the executive branch, but of the judicial branch, she was not entitled to appeal her removal to the MSPB. *Id.* at 1379. The MSPB concluded that as a judicial branch employee she was not "an 'employee' as defined under 5 U.S.C. § 7511(a)(1)," [2] because pursuant to "5 U.S.C. § 7513 an appeal to the Board is limited to 'employee[s] against whom an action is taken under this section.' 5 U.S.C. § 7513(d) (1994)." *Hartman v.*

> The "competitive service" consists of—
> (1) all civil service positions in the executive branch, except—
> (A) positions which are specifically excepted from the competitive service by or under statute;
> (B) positions to which appointments are made by nomination for confirmation by the Senate, unless the Senate otherwise directs; and
> (C) positions in the Senior Executive Service;
> (2) civil service positions not in the executive branch which are specifically included in the competitive service by statute; and
> (3) positions in the government of the District of Columbia which are specifically included in the competitive service by statute.
> 5 U.S.C. § 2102(a). The statute at 5 U.S.C. § 2102(b) states: "Notwithstanding subsection (a)(1)(B) of this section [5 U.S.C. § 2102], the "competitive service" includes positions to which appointments are made by nomination for confirmation by the Senate when specifically included therein by statute." 5 U.S.C. § 2102(b).
> The statute at 5 U.S.C. § 2103 (2006) states:
> (a) For the purpose of this title, the "excepted service" consists of those civil service positions which are not in the competitive service or the Senior Executive Service.
> (b) As used in other Acts of Congress, "unclassified civil service" or "unclassified service" means the "excepted service."
> 5 U.S.C. § 2103.

**2.** The statute at 5 U.S.C. § 7511(a)(1) defines "employee" as:

> (A) an individual in the competitive service—
> (i) who is not serving a probationary or trial period under an initial appointment; or

*MSPB,* 77 F.3d at 1379, 1380 (footnote omitted). The Federal Circuit affirmed the MSPB decision, although on a different theory, because the judicial employee did not have the right to bring a claim to the MSPB based on whistle-blower allegations. *Id.* at 1380–81.

In *Dotson v. Griesa,* the United States Court of Appeals for the Second Circuit reviewed a probation officer's employment termination, based on a *Bivens* claim, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),[3] and also concluded that federal judicial review was not an available remedy for *Bivens* claims brought by a judicial branch employee. *See Dotson v. Griesa,* 398 F.3d 156, 168 (2d Cir.2005), *cert. denied,* 547 U.S. 1191, 126 S.Ct. 2859, 165 L.Ed.2d 894 (2006).[4]

> (ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
> (B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions—
> (i) in an Executive agency; or
> (ii) in the United States Postal Service or Postal Regulatory Commission; and
> (C) an individual in the excepted service (other than a preference eligible)—
> (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
> (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less....
> 5 U.S.C. § 7511(a)(1).

**3.** In *Bivens,* the United States Supreme Court recognized a cause of action for money damages to be brought against federal government officials in their individual capacity for violation of a federal employee's constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S at 397, 91 S.Ct. 1999.

**4.** Other examples of *Bivens* actions brought by judicial employees in which federal courts also have applied the structure of the CSRA, but similarly denied judicial review, include *Blankenship v. McDonald,* 176 F.3d 1192 (9th Cir.1999), *cert. denied,* 528 U.S. 1153, 120 S.Ct. 1157, 145 L.Ed.2d 1069 (2000) and *Lee v. Hughes,* 145 F.3d 1272 (11th Cir.1998), *cert. denied,* 525 U.S. 1138, 119 S.Ct. 1026, 143 L.Ed.2d 37 (1999). In *Blankenship,* the United States Court of Appeals for the Ninth Circuit addressed "whether a feder-

The *Dotson* court referred to the CSRA by noting:

> The detailed protections and remedies afforded federal civil servants by the CSRA do not apply uniformly to all covered employees. Rather, they depend upon an employee's classification within the Act. The CSRA divides civil service personnel into three main classifications: the senior executive service, the competitive service, and the excepted service. The "senior executive service" consists of employees who occupy high-level positions in the executive branch, but for whom nomination by the President and confirmation by the Senate is not required by law. *See* 5 U.S.C. § 3132(a)(2). The "competitive service" consists of employees who are (a) in the executive branch, except for those in the senior executive service or specifically excepted by statute, *see id.* § 2102(a)(1); or (b) not in the executive branch, but included in the competitive service by statute, *see id.* § 2102(a)(2). The "excepted service" consists of employees who are not included in the definitions of either the senior executive service or the competitive service. *See id.* § 2103(a). As these definitions indicate, employees of the judicial branch, including probation officers such as Dotson, *see* 18 U.S.C. § 3602, qualify as excepted service personnel because they are neither in the executive branch nor included in the competitive service by statute.

*Dotson v. Griesa*, 398 F.3d at 163. Using the CSRA construct, the *Dotson* court proceeded to review Mr. Dotson's claim as a "non-preference-eligible member of the excepted service." The Second Circuit further wrote:

> Congress's intent to withhold CSRA review rights from judicial branch employees is discernable in the first instance from the structure of the CSRA. Title 5 does not ignore judicial branch personnel in establishing laws relevant to the civil service.

To the contrary, it specifically includes such personnel within the civil service and defines them as "employees" for various purposes. *See* 5 U.S.C. §§ 2101, 2105; *see also Blankenship v. McDonald*, 176 F.3d at 1195 (noting that in Title 5 "Congress has given judicial employees certain employment benefits and remedies, such as back pay, severance pay, family and medical leave, and health and retirement benefits"). At the same time that Congress thus brought judicial branch employees within the CSRA scheme, however, it expressly excluded them, as members of the excepted service, from specific procedural rights and remedies. *See* 5 U.S.C. §§ 2302, 4301, 7511. Construing this exclusion of excepted service employees (including judicial branch employees) from the then-operative CSRA provisions granting review rights, the Supreme Court in *Fausto* concluded that Congress's action was not inadvertent but deliberate: The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.

*Dotson v. Griesa*, 398 F.3d at 169–70 (footnote omitted). The Second Circuit concluded that:

> Under these circumstances, we conclude that Congress's decision to exclude judicial branch employees from the administrative and judicial review procedures of the CSRA, and from subsequent legislation such as the CAA [Congressional Accountability Act of 1995, *codified* at 2 U.S.C. §§ 1301–1438], was not inadvertent, but a conscious and rational choice made and

al court reporter who has no effective remedies under the Civil Service Reform Act ('CSRA') has an action for money damages, commonly called a *Bivens* action, for alleged constitutional violations in the workplace," *Blankenship v. McDonald*, 176 F.3d at 1194 (footnotes omitted). The *Blankenship* court concluded that the CSRA

precluded the claims. *See id.* at 1196. In *Lee*, the United States Court of Appeals for the Eleventh Circuit found that a probation officer was precluded from pursuing a *Bivens* action because he was not afforded administrative or judicial remedies under the CSRA. *See Lee v. Hughes*, 145 F.3d at 1277.

maintained over the years in light of both a proper regard for judicial independence and recognition of the judiciary's own comprehensive review procedures for adverse employment actions, including review by judicial officers.

*Dotson v. Griesa,* 398 F.3d at 176.

Similarly, the court in *Hill v. United States,* 2005 WL 5612441 (Fed.Cl. Dec. 29, 2005) (unpublished), *aff'd,* 204 Fed.Appx. 877 (Fed.Cir.2006) (not selected for publication),[5] used the CSRA framework to review a variety of claims brought by a judicial branch employee. In a brief opinion in *Hill,* the United States Court of Federal Claims determined that a former courtroom deputy clerk in the United States District Court for the Southern District of Florida was precluded by the CSRA from bringing the claims against the Clerk of the Court, individual employees of the district court, and the Administrative Office of the United States Courts. *Id.* at *3. The court in *Hill* concluded that the "Deputy Clerk position is expressly designated by the District Court as an 'At–Will,' 'Excepted Appointment' " of the judiciary, without administrative or judicial remedies under the CSRA. *Id.* The court reasoned: "They are, however, 'covered' by the CSRA in the sense that Congress deliberately denied certain remedies to them as a class. Consequently, this Court has no jurisdiction to hear Mr. Hill's Back Pay Act claim." *Id.*

Although there are references in other parts of Title 5 to the judicial branch, including, as pointed out by the plaintiff, "references to the judicial branch that are now in Title 5 that were not a part of the CSRA because they either predate or postdate the [enactment of the] CSRA," judicial branch employees were not the focus of the CSRA enactment and are not the focus of the CSRA today. The overarching purpose of the CSRA was to replace, regulate, and reorganize the administrative and judicial review of adverse action employment claims brought by executive branch personnel. *See, e.g.,*

*Thompson v. MSPB,* 433 F.3d at 828; *see also* Statement of Congressman Sugarman, Pub.L. 95–454, Cong. Vol. II at 147 (April 4, 1978). The public law which originally enacted the CSRA only mentions the judicial branch once, in section 603(a) of the CSRA. *See* Pub.L. 95–454, § 603(a) (1978) (*codified at* 5 U.S.C. § 3371(a)(3)). Section 603(a) amended "the Mobility Program" in 1978 and provided for temporary assignment of an employee from an agency, by inserting the following:

> "Federal agency" means an Executive agency, military department, a court of the United States, the Administrative Office of the United States Courts, the Library of Congress, the Botanic Garden, the Government Printing Office, the Congressional Budget Office, the United States Postal Service, the Postal Rate Commission [now called the Postal Regulatory Commission], the Office of the Architect of the Capitol, the Office of Technology Assessment, and such other similar agencies of the legislative and judicial branches as determined appropriate by the Office of Personnel Management....

Pub.L. 95–454, § 603(a).

Despite a handful of cases which apply CSRA terminology, or utilize the structure of the CSRA when analyzing judicial branch, employee, adverse action or termination claims, and the reference in the CSRA to the judicial branch, the CSRA is not the best framework for analyzing whether a judicial branch employee can challenge an adverse action, such as a termination claim. The fact remains that there is no generally available judicial appeal of termination actions available to employees of branches of the government other than the executive branch. Moreover, no waiver of sovereign immunity for judicial employees to contest adverse employment decisions in federal courts has been identified by plaintiff. *See United States v. Testan,* 424 U.S. at 399, 96 S.Ct. 948.

---

**5.** With respect to whether this court was afforded jurisdiction to entertain the *Hill* plaintiff's claim, the Federal Circuit's affirmance in *Hill v. United States* stated, "[n]or, in this case, does the Back Pay Act, because the Civil Service Reform Act, 5 U.S.C. §§ 7501–7543, specifically denies Back Pay Act relief in the Court of Federal Claims to 'excepted service' employees such as Hill." *Hill v. United States,* 204 Fed.Appx. at 878.

In fact, if review of adverse actions claims brought by judicial branch employees had been permitted to the MSPB pursuant to the CSRA, with appeals of those judicial employees' claims from MSPB directed to the United States Court of Appeals for the Federal Circuit, Congress could have occasioned legislative infringement on the independence of the judiciary by the executive branch. The United States Supreme Court has repeatedly emphasized that "separation of powers principles are primarily addressed to the structural concerns of protecting the role of the independent Judiciary within the constitutional design." *Miller v. French,* 530 U.S. 327, 350, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000); *see also CFTC v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (quoting *United States v. Will,* 449 U.S. 200, 218, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (discussing the role of the independent judiciary within the constitutional structure of tripartite government, "to safeguard litigants' 'right to have claims decided before judges who are free from potential domination by other branches of government.' ")). In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court emphasized the principle of "assigning the judicial power of the United States to courts insulated from Legislative or Executive interference...." *Id.* at 64, 102 S.Ct. 2858. The Supreme Court also wrote: "our Constitution unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Id.* at 60, 102 S.Ct. 2858.

Underscoring the importance of the concept of separation of powers, the House Report, discussing the Administrative Office of the United States Courts Personnel Act of 1990, which was directed at employees of the Administrative Office of the United States Courts, an office which administratively supports the judiciary, but which is not involved in issuing judicial opinions, concluded, "[w]hile it may be convenient to have the personnel system of this agency covered by the personnel management network of the executive branch, it is contrary to the doctrine of separation of powers." H.R. Rep. 101–770(I), *reprinted at* 1990 U.S.C.C.A.N. 1709, 1710 (1990); *see also* Administrative Office of the United States Courts Personnel Act of 1990, Pub.L. 101–474, 104 Stat. 1097 (1990). The same House Report also noted that:

> The Administrative Office is, to a large extent, currently subject to the control of the executive branch in personnel matters. The United States courts, which it serves, however, are mostly free of such Executive Branch supervision. The purpose of H.R. 4174 [Administrative Office of the United States Courts Personnel Act of 1990] is to authorize the establishment of an independent, self-contained personnel management system within the Administrative Office [of the courts] which is free from executive branch controls and more similar to that of the rest of the judicial branch.

H.R. Rep. 101–770(I), *reprinted at* 1990 U.S.C.C.A.N. at 1710.

The United States Supreme Court has long acknowledged the authority and responsibility of the courts to control the operation of the courts and any personnel decisions regarding their employees. *See In re Hennen,* 38 U.S. 230, 261–62, 13 Pet. 230, 10 L.Ed. 138 (1839). The United States Supreme Court wrote: "If the power to appoint a clerk was vested exclusively in the District Court [of the United States for the Eastern District of Louisiana], and the office was held at the discretion of the Court, as we think it was; then this Court can have no control over the appointment or removal, or entertain any inquiry into the grounds of removal. If the judge is chargeable with any abuse of his power, this is not the tribunal to which he is amenable; and as we have no right to judge upon this matter, or power to afford redress if any is required, we abstain from expressing any opinion upon that part of the case." *Id.; see also In re Golinski,* 587 F.3d 956, 962 (9th Cir.2009) ("History reveals that Congress intended the Judiciary to have, like Congress itself, the authority to manage its

own personnel and to adjudicate workplace complaints.") (footnote omitted).[6]

In support of its motion to dismiss, defendant also argues that, "this Court does not possess jurisdiction to entertain Mr. Semper's complaint because it does not present a claim for relief pursuant to a money-mandating constitutional provision or statute." According to the defendant, "Mr. Semper attempts to bring this case within this Court's jurisdiction by identifying, in his complaint, four constitutional or statutory provisions, the Due Process Clause, 18 U.S.C. § 3602, 18 U.S.C. § 3672, and the Back Pay Act [5 U.S.C. § 5596]." Defendant argues that "none of these sources is money-mandating." Plaintiff, however, argues that "this Court has jurisdiction under the Tucker Act," because Mr. "Semper is able to offer a network of statutes that either alone or in combination are money-mandating such that this Court has jurisdiction." Plaintiff states, "[t]here are two key Acts of Congress that, particularly when read together, provide the underlying basis for the Back Pay Act to be money-mandating in this case. The first Act [18 U.S.C. § 3672] requires that probation officers be paid a salary. The second Act [18 U.S.C. § 3602] prohibits the termination of a probation officer unless the termination is 'with cause.'"

Plaintiff takes comfort from the fact that in *Scholl v. United States*, 61 Fed.Cl. 322 (2004),[7] the United States Court of Federal Claims took jurisdiction of a claim filed by a bankruptcy judge, who alleged that he had been improperly denied what he claimed was a "mandatory" reappointment to a second,

fourteen year term as a bankruptcy judge. *Id.* at 323. As in Mr. Semper's case, the defendant in *Scholl* argued that the trial court should dismiss plaintiff's claims, alleging, "that the enactment of the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1111 (CSRA), eliminated this Court's authority to hear a back pay claim from the Plaintiff, Bankruptcy Judge David Scholl, an officer of the Judicial Branch." *Scholl v. United States*, 61 Fed.Cl. at 322. In *Scholl*, the defendant also argued "that *Fausto*'s holding extends to personnel of the Judicial Branch just as it does to personnel of the Executive Branch." *Id.* The trial court in *Scholl* wrote: "the resulting conclusion as respects nonpreference eligible employees in the excepted service tells us nothing directly about the CSRA's application to Judicial Branch personnel in general or Article I judicial officers in particular." *Id.* The trial court determined that, "[t]he Defendant's inability to prove that judicial officers fall within the comprehensive scheme governing personnel actions contained within the CSRA is fatal to its argument." *Id.* at 325–26. The trial court, therefore, allowed the plaintiff to proceed with his claims in the Court of Federal Claims. On mandamus to the United States Court of Appeals for the Federal Circuit, the Federal Circuit disagreed with the Court of Federal Claims and ordered dismissal of the case, but on grounds unrelated to the CSRA. *See In re United States*, 463 F.3d 1328, 1329 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2006), *cert. denied sub nom. Scholl v. United States*, 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007). The Federal Circuit found that the Court of Federal Claims

---

**6.** In the footnote, the United States Court of Appeals for the Ninth Circuit in *Golinski* indicated that, historically the Administrative Office of the United States Courts was at one time,

"to a large extent ... subject to the control of the executive branch in personnel matters." H.R. Rep. 101–770(I), at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1709, 1710. In contrast, "[t]he United States courts, which [the AO] serves, ... are mostly free of such Executive Branch supervision." *Id.* In order to correct that asymmetry, Congress determined that the "authority granted under such law to the Equal Employment Opportunity Commission (EEOC), the Office of Personnel Management (OPM), the Merit Systems Protection Board (MSPB), or any other agency in the executive

branch, shall be exercised by the Administrative Office." *Id.* at 1712. No mention of such a power for the courts was necessary. Our authority, part statutory and part inherent, to control matters that touch on the operation of the courts was recognized long before those agencies existed.

*In re Golinski*, 587 F.3d at 962 n. 6.

**7.** *Scholl v. United States*, 61 Fed.Cl. 322 (2004), *motion to certify appeal denied*, 68 Fed.Cl. 58 (2005), *granting defendant's mandamus relief, In re United States*, 463 F.3d 1328 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2006), *cert. denied sub nom. Scholl v. United States*, 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007).

**634**

should not have exercised jurisdiction over plaintiff's claims because as a term employee, plaintiff Scholl had no right to reappointment. *Id.* at 1336. According to the Federal Circuit, once his term appointment as a bankruptcy judge ended, he was no longer entitled to receive pay, and his employment termination was not a form of discharge. Therefore, there was no money-mandating statute upon which plaintiff could rely to provide jurisdiction in the Court of Federal Claims. *Id.* at 1334. The Federal Circuit's dismissal in *Scholl*, therefore, was based on the facts of the term appointment, and not a CSRA analysis.

■ Addressing the first of the four authorities on which plaintiff relies for jurisdiction, plaintiff's assertion that his constitutional due process rights were violated because he was not afforded a hearing prior to his termination must fail. Defendant correctly argues that, "[b]ecause Mr. Semper is seeking recovery for violation of the Due Process clause 'standing alone,' which is not a money-mandating constitutional provision, this Court does not possess jurisdiction to entertain Count I [Denial of Due Process] and it should be dismissed." Indeed, the Due Process clause is not a source of substantive law that creates a right to money damages under the Tucker Act. The United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process clauses of the United States Constitution. *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997) (citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); *see also In re United States*, 463 F.3d at 1335 n. 5 ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for the jurisdiction under the Tucker Act."); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1334 (Fed.Cir.2006); *Collins v. United States*, 67 F.3d 284, 288 (Fed.Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), *reh'g denied* (Fed. Cir. 1995); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts."); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir. 1987) (noting that the Fifth Amendment's Due Process clause does not include language mandating the payment of money damages); *Hampel v. United States*, 97 Fed. Cl. 235, 238, *aff'd*, 429 Fed.Appx. 995 (Fed. Cir.2011); *McCullough v. United States*, 76 Fed.Cl. 1, 4 (2006), *appeal dismissed*, 236 Fed.Appx. 615 (Fed.Cir.), *reh'g denied* (Fed. Cir.), *cert. denied*, 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007) ("[N]either the Fifth Amendment Due Process Clause ... nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Therefore, to the extent that plaintiff raises allegations of a violation of due process, no cause of action can be brought in this court. Due process claims "must be heard in District Court." *Kam–Almaz v. United States*, 96 Fed.Cl. 84, 89 (2011) (citing *Acadia Tech., Inc. v. United States*, 458 F.3d at 1334); *see also Hampel v. United States*, 97 Fed.Cl. at 238.

■ Second, the Back Pay Act alone also is not a money-mandating statute. As found by a Judge of the United States Court of Federal Claims:

The Back Pay Act, 5 U.S.C. § 5596, "does not, itself, provide a statutory basis for invoking this Court's jurisdiction." *Sacco v. United States*, 63 Fed.Cl. 424, 428 (2004) (citing *United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983)). Rather, "[t]he Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute." *[United States v.] Connolly*, 716 F.2d at 887. In order for this Court to have jurisdiction over plaintiffs' claims, "some provision of law other than the Back Pay Act must first mandate ... money damages to an employee suffering an unjustified or unwarranted personnel action." *Sacco [v. United States]*, 63 Fed.Cl. at 428 (citing *Walker v. United States*, 11 Cl.Ct. 77, 80 (1986)).

*Jaynes v. United States*, 75 Fed.Cl. 218, 226 (2007). According to the United States Court of Appeals for the Federal Circuit, the

Back Pay Act can be considered money-mandating, only if it is based a violation of a statute or regulation covered by the Tucker Act. *See Worthington v. United States,* 168 F.3d at 26 ("To fall within the Tucker Act's jurisdictional grant, a claim must invoke a statute that mandates the payment of money damages. The Back Pay Act is such a 'money-mandating' statute when based on violations of statutes or regulations covered by the Tucker Act.").

■ The first of the two other alleged statutory bases for jurisdiction on which plaintiff relies, 18 U.S.C. § 3672, is titled, "Duties of Director of Administrative Office of the United States Courts," and states, in relevant part:

> The Director of the Administrative Office of the United States Courts, or his authorized agent, shall investigate the work of the probation officers and make recommendations concerning the same to the respective judges and shall have access to the records of all probation officers.
>
> He shall collect for publication statistical and other information concerning the work of the probation officers.
>
> He shall prescribe record forms and statistics to be kept by the probation officers and shall formulate general rules for the proper conduct of the probation work.
>
> He shall endeavor by all suitable means to promote the efficient administration of the probation system and the enforcement of the probation laws in all United States courts.
>
> He shall, under the supervision and direction of the Judicial Conference of the United States, fix the salaries of probation officers and shall provide for their necessary expenses including clerical service and travel expenses. . . .

18 U.S.C. § 3672.

Plaintiff argues that the statutory language in 18 U.S.C. § 3672, "He shall, under the supervision and direction of the Judicial Conference of the United States, fix the salaries of probation officers," "requires that there be a salary for probation officers in *every* circumstance." (emphasis in original). Plaintiff also cites to portions of the United States Courts' website, which includes pay tables for the Virgin Islands.[8] Defendant responds that, "[s]tatutes that 'relate to the computation of pay, rather than to entitlement to be paid' are not money-mandating." (citing *Markey v. United States,* 27 Fed.Cl. 615, 624, *aff'd,* 11 F.3d 1072 (Fed.Cir.1993)).

■ The United States Court of Appeals for the Federal Circuit has indicated that a statute is money-mandating if "(1) the statute has 'clear standards for paying' money to recipients, (2) the statute specifies 'precise amounts' to be paid, or (3) the statute compels payment once certain conditions precedent are met." *Doe v. United States,* 463 F.3d 1314, 1324 (Fed.Cir.2006), *cert. denied,* 549 U.S. 1321, 127 S.Ct. 1910, 167 L.Ed.2d 565 (2007) (citations omitted). But, "[a] statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group." *Id.* Based on these criteria, defendant argues 18 U.S.C. § 3672 is not a money-mandating statute. The requirements imposed on the Director of the Administrative Office of the United States Courts, under the supervision and direction of the Judicial Conference, only authorizes that he "fix the salaries of probation officers and shall provide for their necessary expenses including clerical service and travel expenses." Section 3672 does not identify specific amounts to be paid to probation officers, nor does the language of 18 U.S.C. § 3672 specifically mandate that a salary be paid to probation officers. Plaintiff, therefore, is incorrect that 18 U.S.C. § 3672 provides a jurisdictional basis to proceed with his claims in this court.

■ The plaintiff also argues that, when read together with the Back Pay Act, 18 U.S.C. § 3602(a) provides a basis for jurisdiction in this court. Plaintiff states that: "A separate Act of Congress provides that a probation officer appointed to serve with compensation may only be removed 'for cause.'" (quoting 18 U.S.C. § 3602(a)).

---

**8.** *See* http://www.uscourts.gov/Careers/ Compensation/CompensationPayTables.aspx? doc=/uscourts/Careers/2011_Pay_Tables/Court_ Personnel_System_Pay_Tables/Law_ Enforcement_Officer_Rates/CPSN4.pdf.

Plaintiff argues that "Semper's discharge without cause, if proven, clearly qualifies as an unjustified or unwarranted personnel action as envisioned by the Back Pay Act." Defendant responds that 18 U.S.C. § 3602(a) also "is not a money-mandating statute," and "does not command payment of money to probation officers under any situation."

Section 3602 of Title 18 of the United States Code, "Appointment of probation officers," states, in relevant part:

(a) Appointment.—A district court of the United States shall appoint qualified persons to serve, with or without compensation, as probation officers within the jurisdiction and under the direction of the court making the appointment. The court may, for cause, remove a probation officer appointed to serve with compensation, and may, in its discretion, remove a probation officer appointed to serve without compensation.

(b) Record of appointment.—The order of appointment shall be entered on the records of the court, a copy of the order shall be delivered to the officer appointed, and a copy shall be sent to the Director of the Administrative Office of the United States Courts.

(c) Chief probation officer.—If the court appoints more than one probation officer, one may be designated by the court as chief probation officer and shall direct the work of all probation officers serving in the judicial district.

18 U.S.C. § 3602.

Defendant is correct that 18 U.S.C. § 3602 is not a money-mandating statute. The specific language of 18 U.S.C. § 3602(a) makes clear that a United States District Court may appoint qualified persons to serve "with or without compensation." In *Doe v. United States,* the United States Court of Appeals for the Federal Circuit determined, "[a] statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group." *Doe v. United States,* 463 F.3d at 1324. The option to appoint individuals, such as Mr. Semper, to the position of probation officer, "with or without compensation," makes clear that the payment of compensa-

tion to probation officers is discretionary. It also is noteworthy that although 18 U.S.C. § 3602(a) specifies that a district court may remove a probation officer "for cause," it does not define "for cause" or establish procedures relevant to removing probation officers, leaving both the definition of "for cause" and the choice of procedures to the discretion of the judiciary.

Plaintiff's argument, that "[a] 'network' of statutes and regulations can provide the basis for a money-mandating claim even when one statute standing alone may not be money-mandating," also fails. For support that a network of statutes and regulations can provide the jurisdictional basis for a money-mandating claim, plaintiff cites to the United States Court of Appeals for the Federal Circuit decision in *Navajo Nation v. United States,* 501 F.3d 1327, 1335–36 (Fed. Cir.2007), *reh'g and reh'g en banc denied* (Fed.Cir. 2008), *rev'd,* 556 U.S. 287, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009). In *Navajo Nation,* the Federal Circuit concluded that "the purposes of the asserted network of statutes and regulations support finding a *fiduciary relationship* between the government and the Nation *that is money-mandating* under the Indian Tucker Act [28 U.S.C. § 1505 (2006) ]." *Id.* at 1345 (emphasis added). Moreover, in *Navajo Nation,* the Federal Circuit was analyzing the "network theory" of jurisdiction for money-mandating provisions as related to the unique, fiduciary relationship under the Indian Tucker Act. *See id.* at 1341 ("Because such [explicit trust] language is necessary but not sufficient for an Indian Tucker Act breach of trust claim, we proceed to evaluate whether the network of statutes and regulations asserted by the Nation establishes specific fiduciary or other duties that can fairly be interpreted as mandating compensation for damages sustained."). Breach of Indian trust claims pursuant to the Indian Tucker Act, implicate a different line of jurisprudence than the type of claims brought by Mr. Semper, who attempts to rely on 28 U.S.C. § 1491.

As explained by a Judge of the United States Court of Federal Claims:

According to the "the network theory" of jurisdiction under the Tucker Act and Indian Tucker Act, a meshwork of statutes and regulations may, under some circumstances, substitute for a clear money-mandating statute. *See United States v. Navajo Nation ("Navajo Nation I"),* 537 U.S. 488, 504–06, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (explaining that a network of statutes and regulations can satisfy this court's Indian Tucker Act jurisdiction when the "network" establishes specific rights and duties that go beyond a general trust relationship); *Samish Indian Nation v. United States,* 82 Fed.Cl. 54, 61–66 (2008) (recounting the history of the network theory and explaining that a network of statutes may satisfy this court's jurisdictional requirement of a money-mandating source when the network establishes a fiduciary relationship between the government and an Indian tribe). However, *Navajo Nation I* foreclosed the application of this theory in most cases, by requiring that a plaintiff identify *"specific* rights-creating or duty-imposing statutory or regulatory prescriptions" in place of a clear money-mandating statute. 537 U.S. at 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (emphasis added); *see United States v. Navajo Nation* ("*Navajo Nation II"*), [556] U.S. [287], 129 S.Ct. 1547, 1554–55, 173 L.Ed.2d 429 (2009) (explaining that *Navajo Nation I* foreclosed application of the network theory where the statutes comprising the network only created an implied duty).

*Rosales v. United States,* 89 Fed.Cl. 565, 574 n. 9 (2009) (emphasis in original); *see also United States v. Navajo Nation,* 556 U.S. at ——, 129 S.Ct. at 1558.[9] Defendant correctly points out that, "even if, as Mr. Semper suggests, we read together the three statutes he cites, Mr. Semper has not identified a statute or regulation that 'commands payment' for terminating a probation officer without cause." Neither the network theory,

nor the constitutional or statutory provisions on which plaintiff attempts to rely, provide jurisdiction in this court to allow review of plaintiff's termination claims.

Although not dispositive in plaintiff's case, Mr. Semper is correct that the Judicial Conference developed a Model Adverse Action Procedure for Removal of a Probation Officer. *See* Model Adverse Action Procedure For Removal of a Probation Officer (1993); *see also* Memorandum from L. Ralph Mecham, Dir., Admin. Office of the United States Courts, to Chief Judges of the United States Court of Appeals and Dist. Courts and Chief Probation Officers, regarding Model Adverse Action Procedure for Removal of a Probation Officer (Apr. 29, 1993). Plaintiff also recognizes that at the time Mr. Semper was terminated from his position as a probation officer, the United States District Court of the Virgin Islands had not adopted the model procedure. More recently the Judicial Conference released an amended Model Dispute Resolution Plan, which the District Court of the Virgin Islands also appears not to have adopted at the time Mr. Semper was terminated. *See* Model Employment Dispute Resolution Plan (2010). The District Court of the Virgin Islands, however, did adopt an Equal Employment Opportunity and Employment Dispute Resolution Plan. This plan, however, does not apply to Mr. Semper's case because it covers only equal employment opportunity and anti-discrimination rights. *See* Equal Employment Opportunity and Employment Dispute Resolution Plan, District Court of the Virgin Islands. Although 18 U.S.C. § 3602(a) and the Model Adverse Action Procedure for Removal of a Probation Officer offer general guidance for the appointment and removal of probation officers, they leave to individual courts the discretion and responsibility to decide on local court, employment procedures for dealing with adverse actions, including whether or

---

**9.** The Supreme Court reversed the Federal Circuit's determination that the three statutory provisions allowed the Tribe's claim to proceed, concluding: "None of the sources of law cited by the Federal Circuit and relied upon by the Tribe provides any more sound a basis for its breach-of-trust lawsuit against the Federal Government than those we analyzed in *Navajo I* [537 U.S.

488, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003)]. This case is at an end. The judgment of the Court of Appeals is reversed, and the case is remanded with instructions to affirm the Court of Federal Claims' dismissal of the Tribe's complaint." *United States v. Navajo Nation,* 556 U.S. at ——, 129 S.Ct. at 1558.

**638**

not to adopt any of the model procedures developed by the Judicial Conference. Simply because the District Court of the Virgin Islands has not adopted the model procedures does not give plaintiff a cause of action in this court or in any other federal court. In sum, none of the three statutes, the constitutional provision, or plaintiff's network theory on which plaintiff attempts to rely, provide jurisdiction for this court to review plaintiff's claims.

 Finally, defendant argues that with respect to plaintiff's request to be reinstated to his former position as a probation officer, "this case should be dismissed for failure to state a claim, because this Court cannot award Mr. Semper the relief he seeks." The United States Court of Federal Claims lacks the authority to grant declaratory and/or injunctive relief absent a specific and express statute of Congress. As indicated by the United States Court of Appeals for the Federal Circuit, "[a]lthough the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, *see* 28 U.S.C. § 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed.Cir.1998); *see also United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments."); *Pryor v. United States*, 85 Fed.Cl. 97, 103 (2008). Plaintiff has not identified a statute which establishes jurisdiction in this court to grant him the relief he seeks. Consequently, defendant is correct that this court does not have the authority to order plaintiff's reinstatement or jurisdiction to review his claims.

### CONCLUSION

Based on the discussion above, Mr. Semper's employment termination is not judicially reviewable and cannot be challenged in this court. Moreover, this court does not have the authority to reinstate plaintiff to his former position as a probation officer. Defendant's motion to dismiss, therefore, is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**